UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

UNITED STATES OF AMERICA

-vs-                                                    Case No.:  2:06-cr-98-FtM-29SPC

JUAN GONZALEZ-HERNANDEZ
_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

This matter comes before the Court on the Defendant Juan Gonzalez-Hernandez's Motion to Suppress Evidence (Doc. #44) filed on October 13, 2006. The Government filed its response in opposition on October 17, 2006. Subsequently a hearing was held on the matter before the Honorable Sheri Polster Chappell, United States Magistrate Judge, on October 25, 2006. At hearing, the Government called Agent Miguel A. Davis and Agent Carlos M. Perez, both with the United States Border Patrol. In addition to the Border Patrol Agents, the Government offered into evidence the Defendant Gonzalez's Miranda Rights Waiver Form (Gov.t' Exhibit # 1), the Defendant Lopez's Miranda Rights Waiver Form (Gov't. Exhibit # 2), the Defendant Gonzalez's written confession (Gov't Exhibit # 3), and Agt. Davis' written statement that the Defendant Lopez refused to make a statement after being Mirandized (Gov't. Exhibit # 4). The Defendant did not introduce any evidence nor testify on his own behalf.

**TESTIMONY AND EVIDENCE**

**Senior Patrol Agent Miguel A. Davis**: (Tr. 3-30).

Agt. Davis has served with the United States Border Patrol since 1993. (Tr. 3:25). In the early morning hours on August 15, 2006, Agt. Davis was assigned as the case agent investigating the

alleged landing of illegal aliens on Marco Island. (Tr. 4:1-9).  There were two individuals who were suspects in the alleged smuggling operation -  Juan Gonzalez-Hernandez and Noel Lopez. (Tr. 4:14-19).  The Defendant Gonzalez was placed under arrest and transported by Agt. Davis to the Border Patrol's Pembroke Pines Station in Miami for processing. (Tr. 4:22-25, 5:1).  Although the actual stop and arrest took place around 7:00 am. the actual interview at Pembroke Station did not take place until 7:00 pm. that evening. (Tr. 15:20-25, 18:2-6).  Agt. Davis stated that the delay between the arrest and the reading of the Defendant's <u>Miranda</u> rights occurred because he was helping the investigation at the Marco Island sight including working on transportation for the Defendant back to Pembroke Pines as well as working on transportation for the twenty (20) illegal aliens allegedly brought over from Cuba to the United States. (Tr. 28:20-25, 29:1-9).  He also testified that he did not  question the Defendant during the twelve (12) hour lapse of time (Tr. 18:13-20).

      The two suspects were processed, their photos and finger prints were taken, and Agt. Davis got sworn statements from them. (Tr. 5:2-7).   Agt. Davis testified that he never addressed the Defendant in English, but only spoke to the Defendant in Spanish. (Tr. 5:8-14).  Agt. Davis is from Puerto Rico and Spanish is his native language. (Tr. 5:15-18).  Agt. Davis stated that he read the Defendant his <u>Miranda</u> rights from the government's prepared form in Spanish although the card has both English and Spanish. (Tr. 6:13-21, 7:17-18).  Agt. Davis testified that he asked the Defendant if he understood his rights. (Tr. 7:20-23).  According to Agt. Davis, the Defendant appeared to understand, indicated that he understood his rights, waived those rights, and agreed to speak freely. (Tr. 7:20-25, 8:1-9).  Although he did appear somewhat nervous, the Defendant's demeanor was cooperative and composed. (Tr. 8:3-7).  The Defendant then signed the waiver form which was witnessed by Agt. Davis and Agt. Noel Perez. (Tr. 8:21-25, 9:1-7).

After the Defendant had signed the waiver form, Agt. Davis asked the Defendant if he wished to make a written statement. (Tr. 12:8-17). The Defendant agreed to make his statement in writing, but requested that Agt. Davis write the statement for him. (Tr. 12:11-17). The Defendant told Agt. Davis what happened and the Agt. wrote the statement down in English. (Tr. 12:18-19). Agt. Davis then signed the statement and read it back to the Defendant who agreed with what the statement said and then signed it.(Tr.12:23-25, 13:1-6).

At no time did the Defendant state that he did not want to speak with Agt. Davis or that he wanted to stop the interview. (Tr. 14:3-6). Agt. Davis testified that no coercion, force, or threats were used in obtaining the Defendant's statement. (Tr. 8:10-20). The Defendant's wife arrived at the Pembroke Pines station that evening with the Defendant's daughter. Agt. Davis went stated that the Defendant had already given his statement by the time he saw his wife and daughter and that they were not used as a coercion to get him to make a statement. (Tr. 14:18-21).

After Agt. Davis interviewed the Defendant, he also interviewed Noel Lopez. Lopez was given the same waiver form as the Defendant however, Lopez refused to sign the waiver and refused to answer any questions. (Tr. 10:9-18).

**Agent Carlos M. Perez**: (Tr.30-39).

Agt. Perez has served with the Border Patrol for fifteen (15) years. (Tr. 31:1-5). On August 15, 2006, Agt. Perez assisted Agt. Davis in interviewing the Defendant. (Tr. 31:6-10). Agt. Perez witnessed Agt. Davis read the Defendant his <u>Miranda</u> rights in Spanish from the Government's form. (Tr. 31:11-15). Agt. Perez is from Puerto Rico and Spanish is his native language. (Tr. 31:16-20). The Defendant was read his Miranda rights, in Spanish, from the government's standard issue form used by the agents before they start a sworn statement. (Tr. 32:1-8). After the Defendant was read

his Miranda rights, he freely agreed to speak with Agt. Davis. (Tr. 32:14-17). Agt. Perez then signed the Miranda waiver form as a witness. (Tr. 33:5-10).

Agt. Perez testified that no coercion, threats or force were used to induce the Defendant to make a statement. (Tr. 34:1-11). The Defendant did not have any trouble understanding the Spanish that was being spoken. (Tr. 34:22-25). As for the Defendant's demeanor Agt. Perez testified that he was cooperative and he even stated that he "didn't care if he had to do any time all he cared was that his wife and daughter was here." (Tr. 32:20-22). Furthermore, the Defendant's wife and daughter were not used in any way to make the Defendant give a statement. (Tr. 34:6-21). Although, the Defendant did meet with his wife and daughter after the interview. (Tr. 34:9-15).

Agt. Perez was also present when the Defendant Lopez was read his Miranda rights. (Tr. 33:12-22). Lopez did not wish to make any statements at that time. (Tr. 33:23-25).

## DISCUSSION

The Defendant argues that his statements made to Agt. Davis were not knowingly and voluntarily made and therefore, they should be suppressed as a violation of his Miranda and Fifth Amendment right protecting a defendant from making self-incriminating statements. The Government argues that the Defendant was aware of his Miranda rights and freely and voluntarily waived those rights when he spoke with Agt. Davis.

A person need only be informed of his Miranda rights if he is in custody and is being interrogated. Miranda v. Arizona, 384 U.S. 436, 478-479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). Under Miranda, custody is the depravation of freedom of action normally associated with an arrest. Id. at 444. The Supreme Court defined interrogation as "express questioning or words and actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating

response from the suspect. Rhode Island v. Innis, 446 U.S. 291, 300-301, 110 S. Ct. 1682 (1980). In this instance, it is undisputed that the Defendant was interviewed while in custody. Thus, the issue before the Court is whether or not the Defendant's incriminating statements during his interview at the U.S. Border Patrol Station located at Pembroke Pines were freely and voluntarily made.

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. The Fifth Amendment right to remain silent is intended to operate prophylactically, to protect a defendant from making self-incriminating statements during his arrest or interrogation that might be used against him in the course of subsequent legal proceedings. McGriff v. Dept. of Corrections, 338 F.3d 1231, 1235 (11th Cir. 2003) (citing Miranda v. Arizona, 384 U.S. 436, 478-479, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)). As with most rights, the right against self-incrimination may be waived so long as the waiver is voluntary, knowing, and intelligent. U.S. v. Goodman, 147 Fed. Appx. 96, 101 (11th Cir. 2005). A waiver is effective where the "totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension." Id. (quoting Moran v. Burbine, 475 U.S. 412, 421, 106 S. Ct. 1135, 89 L. Ed. 2d 410 (1986)).

As noted above, in determining whether any incriminating statements were made under duress and were not freely and voluntarily made, the Court must examine the totality of the circumstances surrounding the consent. U.S. v. Ramirez-Chilel, 289 F.3d 744, 749-750 (citing U.S. v. Robinson, 625 F.2d 1211, 1218 (5th Cir. 1980)). Factors in assessing voluntariness include: the Defendant's age, intelligence, education, and language ability; the Defendant's knowledge of his constitutional right to refuse consent; the degree to which the individual cooperates with the police, the Defendant's attitude about the likelihood of the discovery of contraband; and the length of the detention and

nature of the questioning. Schneckloth v. Bustamonte, 412 U.S. 218, 226, 93 S. Ct. 2041, 36 L. Ed.2d 854 (1973); Ramirez-Chilel, 289 F.3d at 752 (citing U.S. v. Gonzalez, 71 F.3d 819, 830-831 (11th Cir. 1996)).

Agt. Davis testified that he read the Defendant his Miranda rights in Spanish from the government issued form. (Tr. 6:13- 21, 7:17-18). Agt. Davis and Agt. Perez are native Spanish speakers and were able to effectively communicate with the Defendant. (Tr. 5:15-18, 31:16-20). According to Agt. Davis, the Defendant understood his rights and agreed to waive those rights and speak with Agt. Davis. (Tr. 7:20-25, 8:1-9). The Defendant signed the waiver and then made a statement. (Tr. 7:20-25, 8:1-2). Both agents testified that no coercion force, or threats were used to elicit the Defendant's cooperation. (Tr. 8:10-20, 34:1-11). In fact, both agents testified that the Defendant was cooperative and composed during the interview. (Tr.8:3-7, 32:20-22).

The Defendant argues that his written statement was written in English by Agt. Davis and that he did not understand what he was signing. Contrary to the Defense's argument, Agt. Davis testified that he wrote the statement, at the Defendant's request, and then explained what was written in the statement to the Defendant in Spanish. (Tr. 12:8-17). The Defendant agreed that the written statement accurately conveyed the events and circumstances surrounding the incident. (Tr.12:23-25, 13:1-6). Agt. Perez, who witnessed the proceedings, and signed the waiver form as a witness confirmed Agt. Davis' testimony that the Defendant was willing to talk. (Tr. 32:14-25, 33:1-11). No testimony was offered to dispute Agt. Davis' and Agt. Perez's testimony and the Court found their version of the events very credible.

Based on the evidence and testimony presented at the hearing it is clear that Agt. Davis was able to communicate with the Defendant in Spanish. The Defendant had no trouble understanding his

rights. The circumstances surrounding the interview indicate that the Defendant after having his rights read and explained to him in Spanish freely and voluntarily waived his right against self incrimination. Therefore, it is respectfully recommended that the Defendant's Motion to Suppress should be denied.

Accordingly, it is now

**RECOMMENDED:**

The Defendant Juan Gonzalez-Hernandez's Motion to Suppress Evidence (Doc. #44) should be **DENIED**.

**Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.**

Respectfully recommended at Fort Myers, Florida, this __8th__ day of November, 2006.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record